## CAMP *vs.* PULVER.

If a contract of sale is void for the fraud of the vendor, the purchaser may maintain an action to recover the value of property delivered in part performance of it.

In such a case, the property being wrongfully obtained, the purchaser may maintain trover for it, or, waiving the tort, he may maintain an action of assumpsit to recover the value of the property.

Upon the trial of such an action it is proper to show the circumstances under which the goods came into the defendant's possession; and for that purpose, to prove the contract, and the delivery of the goods in performance of it, and then to give evidence of the fraud upon which the plaintiff relies to avoid the contract.

To sustain an action to recover the consideration paid by the plaintiff upon the purchase of land, on the ground of fraud in the vendor, it must satisfactorily appear that the defendant, in making the contract of sale misrepresented some material fact affecting his title, or that he intentionally concealed some such fact from the knowledge of the purchaser.

If there is any evidence showing such misrepresentation, or concealment, a report of referees will not be disturbed upon that ground, whatever may be the opinion of the court as to the weight of such evidence. *Per* HARRIS. P. J.

The court will not determine the question whether a new trial should be granted, on the ground that the testimony of an interested witness has been received, when, under the existing law, no objection would lie to the competency of the same witness upon a new trial.

A forfeiture incurred by a tenant, in cutting and removing wood and timber, will be waived by the landlord's subsequently receiving rent from him. *Per* HARRIS, P. J.

MOTION to set aside report of referees. On the 24th of October, 1842, an agreement in writing and under seal was entered into, between the parties to this suit, whereby the defendant agreed to sell to the plaintiff a farm in the town of Ghent, containing 175½ acres, at $70 per acre, subject to a deduction of $142,50; a quit-claim deed, with covenants against his own acts, was to be executed by the defendant on the 15th of December following. The farm was encumbered by two mortgages amounting to $5000 besides interest, the payment of which was to be assumed by the plaintiff as a part of the purchase money. The plaintiff was also, at the same time, to con-

Camp *v.* Pulver.

vey to the defendant 640 acres of land in Michigan at $5 per acre on account of the purchase money. The plaintiff, in further payment for the farm, sold and delivered to the defendant a quantity of wheat and other personal property amounting to about $1500. The balance of the purchase money was to be paid in annual instalments of $500 each, with interest. The defendant guarantied that the annual rent reserved on the farm, did not exceed $20, and in case it should, the plaintiff was to have a proper deduction, for the excess, made from the purchase money.

Before the deeds were executed in pursuance of the contract, the plaintiff refused to perform the agreement, on the ground that he had been induced to enter into the agreement by the defendant's fraud, and that he was therefore not bound to perform it; and in February, 1843, he commenced this suit to recover the value of the personal property he had delivered to the defendant in part payment for the farm. The declaration contained a count for goods sold and delivered, and the common money counts. The defendant pleaded the general issue; and, the cause having been referred, the referees made a report in favor of the plaintiff, in May, 1846, which was set aside by the late supreme court in October, 1847. The cause was again heard by the referees, who, on the 15th of June, 1848, made another report in favor of the plaintiff for $1977,64, which report the defendant moved to set aside. The grounds upon which he relied sufficiently appear in the opinion of the court.

*H. Hogeboom*, for the plaintiff.

*J. C. Newkirk*, for the defendant.

*By the Court*, HARRIS, P. J.   If the contract was in fact void for the defendant's fraud, there can be no doubt of the plaintiff's right to maintain an action to recover the value of the property delivered in part performance of it. The goods were wrongfully obtained, and he might have maintained trover for them; or, waiving the tort, he may maintain an action like this, to

Camp v. Pulver.

recover what the goods were worth.   Upon the trial of such an action, it is proper to show the circumstances under which the goods came into the defendant's possession ; and for that purpose to prove the contract, and the delivery of the goods in performance of it, and then the fraud upon which the plaintiff relies to avoid it.   The referees were right, therefore, in allowing the plaintiff to prove the contract and then to give evidence tending to show that it was in fact void for fraud.

I think, too, that the witness Stever was competent.   It is true, that at the time he was offered, it had been proved that, as the partner of the plaintiff, he was a joint owner with him of the property for which the suit was brought.   This fact might, if it should not have the effect of defeating the action altogether, have entitled him to a share of whatever might be collected of the defendant.   But whatever interest he may otherwise have had was discharged by the releases executed by himself and the plaintiff.   He thereby surrendered to the plaintiff all right he might have had to claim of the plaintiff a share of the recovery.   The objection that he was interested, was thereby removed ; and, in respect to the guaranty, as the evidence stood when the witness was offered, he was not liable upon it at all. The guaranty is that all the wheat mentioned in the contract, when mixed, one bushel thereof with five bushels of sound and perfect wheat, shall make superfine flour.   It is signed "Camp & Stever ;" but Mr. Monell, who drew the papers, states that " the guaranty was signed by the plaintiff, and that Stever was not present."   There is no evidence that Stever ever assented to it, and without such evidence, he probably would not be liable upon it.   But, however that may be, the indemnity executed by the plaintiff restored his competency.   It is not necessary, therefore, to determine whether a new trial should be granted, on the ground that the testimony of an interested witness has been received, when under the present law no objection would lie to the competency of the same witness upon a new trial.

The objection that Stever should have been joined as a plaintiff cannot be sustained.   The question was determined by the

court upon the application to set aside the first report of the referees. The decision was clearly right. Though the property, up to the time of the transaction, was owned by Camp & Stever yet it was sold by the plaintiff alone, on his individual account, with the consent of Stever, and purchased by the defendant as the plaintiff's individual property. Whether the plaintiff, in his transactions with the defendant, should lose the property or not, he had become liable to account for it with his partner. As between him and the partnership, he had become individually the purchaser of the property from the firm.

The defendant held his title to the farm he had agreed to sell to the plaintiff under a lease in perpetuity executed by James Van Rensselaer to John G. Tator. The lease contained the usual reservation of quarter sales, and also a covenant against waste. The farm was conveyed to the defendant, by a son of John G. Tator, in the spring of 1838. In the winter following, the defendant sold the farm to Philip P. Pulver, and in the fall of 1842, Philip P. Pulver conveyed the farm back to the defendant. During the time he held the title, Philip P. Pulver had in his possession the Van Rensselaer lease. The ground upon which the plaintiff sought to avoid the contract was that the defendant had fraudulently concealed from him the fact that the farm was subject to quarter sales, and the covenant against waste. Upon the trial, Philip P. Pulver was asked by the defendant's counsel, whether, while he had the lease in his possession, he had read the whole of it, and also whether he knew of the covenant in the lease against carrying away timber. These questions were objected to, and the testimony was excluded by the referees. The defendant's counsel contends that the evidence was admissible to rebut the inference that because the defendant had had the lease in his possession, he must have known its contents. But I think the referees decided correctly in excluding the evidence. Whether or not Philip P. Pulver had read the lease, or knew what covenants it contained, could have no legitimate bearing upon the question whether the defendant himself, at the time he made the contract with the plaintiff, knew of these provisions in the lease

and fraudulently concealed them.    Because another person had not informed himself of the contents of the lease when he might, it could not properly be inferred that the defendant had not done so.

I think, too, the referees properly admitted the testimony of Mr. Monell, by whom the contract of the 24th of October, 1842, was drawn, and also the testimony of Joseph D. Monell to show that when the contract was executed nothing was said about quarter sales, and that subsequently the plaintiff did not inquire of him for a release or any other paper relating to the quarter sales.    The evidence was proper to repel any presumption which might possibly be drawn from the other evidence in the case, that the plaintiff was not himself ignorant of this charge upon the farm when he purchased.

It was insisted, upon the trial, on the part of the defendant, as one ground of defence, that the farm was not in fact subject to quarter sales; that reservation in the lease having been released by Van Rensselaer, the original lessor.    With a view to show that the quarter sales had not been released, and also as tending to show the defendant's knowledge of the existence of such a charge upon the farm, when he made the sale, the plaintiff offered in evidence an agreement executed by John Watts De Peyster, who then claimed to be entitled to the reservations in the lease executed on the 27th of February, 1843, whereby, in consideration of $700 he agreed to release to the defendant "the quarter sales and all future rights to quarter sales," upon the farm in question.    This agreement contained a clause in the following words:    "It is understood that in case of its being determined finally, that my title to such quarter sales is not good, then I am to refund the $700 without interest."    The referees properly received this evidence.    It tended to rebut the position assumed by the defendant, that the quarter sales had been released.    It was also pertinent to the question whether at the time the defendant sold the farm to the plaintiff he knew that the lease under which he held the farm contained such a reservation.    For the same reason the testimony of De Peyster and his counsel, Mr. Livingston, was

properly received. The declarations of the defendant and his counsel, when negotiating with De Peyster and his counsel, were competent evidence, as bearing upon the questions at issue between the parties. The plaintiff had a right to show, if he could, by the testimony of these witnesses, that when the defendant applied for the release of the quarter sales, he admitted, or did not deny, the existence of such a charge upon the farm. But it was equally proper that the defendant should be allowed to show what he could to rebut the testimony which had thus been received on the part of the plaintiff. It had been proved by De Peyster and Livingston that when the agreement of the 27th of February was executed, it was not pretended that a release of the quarter sales had before been executed, and that the last clause in that agreement related to the litigation then pending between Van Rensselaer and De Peyster in reference to the reservations in that and other leases upon the same tract of land, and not to the execution of any former release. To countervail the effect of this evidence, the defendant offered to prove that on the day the agreement was executed by De Peyster, and before it was executed, the defendant and his counsel called on Ambrose L. Jordan, who was the counsel of De Peyster, and with whom De Peyster at the same time consulted on the subject of the release, and that it was then stated by them, that the plaintiff and defendant had made a contract for the sale of the farm, and that the plaintiff had refused to take the farm, on the ground that it was charged with quarter sales; that as they understood it, the quarter sales had been released, but the release could not be found, and they wished to obtain another release with a view to take from the plaintiff all excuse for not executing his contract, as it was a good sale for the defendant; and that thereupon Mr. Jordan advised that De Peyster should agree to refund the money to be paid for the release, in case it should turn out that there was another release. This evidence was improperly excluded by the referees. It was not only pertinent, but material evidence for the defendant, as the testimony then stood. Whether De Peyster was present or not when these statements

were made to Mr. Jordan, the testimony was admissible. The defendant's statements upon the occasion of procuring the release had been proved by the plaintiff, as tending to convict him of a fraudulent concealment of a material fact, when he made the contract with the plaintiff for the sale of the farm. It was important to the defendant that he should be allowed to show other statements made by him upon the same occasion, which might have the effect to overcome the testimony already given, and satisfy the referees that when he made the sale he acted honestly. The testimony he offered tended to that result and should therefore have been received.

I think, too, the defendant should have been allowed to show that he had, during the summer or autumn of 1843, paid up the rent upon the farm. One ground upon which the plaintiff claimed to be exonerated from the performance of his contract for the purchase was, that the title had been forfeited by committing waste upon the land, in violation of the conditions of the lease. There was evidence to show that wood and timber had been occasionally cut and removed from the farm for many years, whereby a technical forfeiture might possibly have accrued. Such forfeiture would be waived by the landlord's receiving rent. It was competent for the defendant to prove that, notwithstanding the violation of the provisions of the lease in this respect, the landlord had received his rent. It was relevant, as tending to show that this objection to the defendant's title to the farm was unfounded.

Upon these grounds the report must be set aside. But upon the merits also, the case is, in my judgment, with the defendant. I have diligently, and again and again perused the entire mass of evidence presented in the case, and have been unable to find sufficient evidence to justify the referees in finding the contract of the 24th of October void, for the defendant's fraud. There is no evidence whatever of the negotiation which resulted in the agreement for a sale and purchase of the farm, or what was said by either upon that occasion. The first information we have of the transaction, is when the parties met at Hudson to have their contract reduced to writing, and

Camp *v.* Pulver.

the only statement then made by the defendant which is relied upon to establish fraud is, that there was no difficulty in respect to his title. It is not easy to believe that the plaintiff was ignorant of the nature of the tenure under which the farm was held. Such tenures were very prevalent in most parts of the county and in the very neighborhood where this farm was situated. It is notorious that their objectionable features were then the subject of much public discussion and general complaint. The plaintiff had before purchased another farm adjoining that in question, and which was held under a similar title. To say that under such circumstances, the plaintiff made the contract of the 24th of October, without inquiring as to the conditions and reservations contained in the lease, and in utter ignorance of the quarter sale charge upon the farm, is to deny him the exercise of ordinary intelligence and prudence. To sustain this action it should satisfactorily appear that the defendant, in making the contract for the sale of the farm, misrepresented some material fact affecting his title, or that he intentionally concealed from the knowledge of the plaintiff some such fact. If there were any evidence showing such misrepresentation or concealment, the report should not be disturbed upon that ground, whatever might be our opinion as to the weight of such evidence. But I am constrained to say, that I do not find in the case any proof to warrant the decision of the referees. For this reason also, the report is wrong, and the motion to set it aside must be granted.

PARKER, J. dissented.