EMMET, Receiver of the Alliance Insurance Company *against* REED.

Where a mutual insurance company was authorized to receive notes in advance for premiums of insurance, and a note was received upon an agreement that the maker might pay it in premiums on policies which he might procure in his own name or for his friends, and the agreement was fully performed and the note returned; neither the company, nor one appointed its receiver can repudiate the agreement and collect a part of the note which was paid by policies issued to other persons than the maker.

Such an agreement made with the secretary and approved by the president of the company, and ratified as other transactions of the company were, although not by a formal vote of the directors, can not be repudiated after the company has reaped the benefit of it.

This action was brought in the superior court of the city of New York, to recover an amount claimed to be due upon a note for $5000 given by the defendant to the Alliance Mutual Insurance Company, dated May 1, 1846, and payable twelve months after date.

The Alliance Mutual Insurance Company, was incorporated by chapter 94 of the laws of 1843. By the second section of the act of incorporation it was made the duty of the commissioners therein named, to open a book to receive applications for insurance, and after receiving such applications to be approved by them to the amount of five hundred thousand dollars, the premium on which should have been actually paid in or secured to be paid, they were authorized

Emmet *against* Reed.

to organize the company. By the seventh section, certain sections, among which was section twelve, of the act to incorporate the Atlantic Mutual Insurance company (*Laws of* 1842, *Chap.* 217,) was made applicable to and included in the former act. This section was as follows:

" § 12. The company for the better security of its dealers may receive notes for premiums, in advance, of persons intending to receive its policies, and may negotiate such notes for the purpose of paying claims or otherwise in the course of its business; and on such portions of said notes as may exceed the amount of premiums paid by the respective signers thereof, at the successive periods when the company shall make up its annual statement as hereinafter provided for, and on new notes taken in advance thereafter, a compensation to the signers thereof, at a rate to be determined by the trustees, but not exceeding five per cent. per annum, may be allowed and paid from time to time."

The note in question was given by the defendant at the solicitation of Lewis Benton, who then had it in view to become an officer of the company and who afterwards became its secretary. He agreed with Benton to give it, with the right to pay it in policies of insurance which he might procure in either his own name or the names of other persons whom he should influence to insure with the company. There was no specific authority given to Benton to take the note upon those terms. Benton, however, explained to the president of the company the terms upon which the note was given, and he approved of the transaction. During the year ensuing the date of the note, the defendant obtained policies of the company, the premiums upon which amounted to $2357·93 upon account of the said note and for which he paid his check, and gave the company a note for $2642·07, dated May 1, 1846, and payable twelve months after date, for the balance of the $5000 note, and received the latter from the company. He subsequently obtained policies of the company the premiums upon which he paid in cash, so as to reduce the amount due on

Sel. IV.—40.

the second note to $1022·77, as of May 1, 1846, for which he gave a third note at twelve months, in place of the second which was delivered to him. The amount payable by the third note- was in a similar manner reduced to $156·24, for which he gave a fourth note and received the third, and the amount of the fourth note he subsequently paid to the company and received the note from it.

In the account books of the company the defendant was charged with the premiums upon the policies he obtained whether for himself or his friends, and was credited with the notes received and the cash paid for the premiums, and when the notes were given up to him they were charged to him. It appeared that he had obtained policies for other persons than himself to the amount of $2528·82, the premiums upon which were so charged to him. The plaintiff claimed that this sum had been wrongfully and mistakenly applied in reduction of the $5000 note, and that the defendant was liable upon the note for that sum.

The action was tried by referees, who reported the facts above set forth, and in favor of the defendant, and stated the following conclusions of law by them found.

" 1. That the 12th section of the act, authorizing the company to receive notes for premiums in advance from persons intending to receive its policies, does not render it imperative that those notes shall be paid only in premiums on policies issued to the makers of the notes and upon property owned by them personally—that the true intent and spirit of the section render it immaterial whether such notes be paid by premiums of insurance upon the maker's own property, or upon that of such other persons as he may influence to insure with the company and to receive their policies through him, or upon policies issued in blank and received by him, provided the whole transaction be, as in this case, in good faith, and the whole amount of the note actually received in cash by the company.

" 2. That the power of the company to make such an ar-

rangement can be no more doubted than their power to adopt any other mode of obtaining business and influencing persons to insure with them, either by the employment of agents or otherwise.

" 3. That whether the arrangement made in this case by Mr. Benton with the defendant was originally made in pursuance of authority or not, it was subsequently fully recognized and ratified by the company, its results carried through their books from time to time, before the eyes of all the officers and directors, without objection from any of them, and by the express direction of the president and secretary; and that it thus became binding upon the company.

" 4. The arrangement having been made in good faith, ratified and carried out, and the note of the defendant fully paid in good faith, no person having been defrauded or wronged by it, and there having been, so far as the referees can perceive, no probability of fraud or wrong from it any more than from all ordinary business transactions, we can see no principle of law or equity which would justify us in calling upon the defendant to repay money which has been already paid, which the company have had the full benefit of, and which, if paid again by the defendant would be paid for no gain to himself and for no loss to any body else."

The superior court at general term affirmed a judgment entered upon the report, and the plaintiff appealed to this court.

*A. L. Robertson* for appellant.

*S. Sherwood* for respondent.

GARDINER, J., delivered the opinion of the court.—The note of the defendant was given under an agreement, that he should have the right of paying the whole amount in policies of insurance, which he might procure either in

his own name, or in the names of his personal friends, or other persons whom he should influence to insure in the company. This agreement was made with the secretary of the company, and communicated to the president and approved by him, and directions were by him given that the note should be used upon the terms prescribed. This was done and the transaction was ratified and approved like other business transactions, but without any formal vote of the directors, or of any committee upon the subject. The arrangement was made and carried out, as the referees find, in good faith, and the note fully paid. And this action is brought to recover the amount of premiums received from third persons effecting insurance at the solicitation and by the influence of the defendant.

It will be perceived by the facts above stated, that the agreement under which the note was made was completely executed: that there is no pretence of mistake or fraud in the transaction; and I do not perceive how the company or its creditors can repudiate the arrangement after reaping its benefits, or equitably charge the defendant with premiums which he procured to be paid, which were voluntarily applied upon his note.

If there were doubts as to the authority of the company to make the agreement, still as they have availed themselves of his services in their behalf and canceled his notes they are disqualified to maintain this action.

Suppose the agreement had been annexed to the note by way of defeasance, the defendant might not have been entitled to claim a performance while it was executory—but it is certain that the company could not disregard the defeasance and sue upon the note as an unconditional promise to pay the sum therein specified.

Whatever difficulties might have attended the attempt to establish a parol defeasance, yet as it was made, acted upon and executed, neither the company nor its creditors can now avoid the condition and make the instrument absolute. This would be a palpable fraud. Without as-

suming, therefore, to determine whether the 12th section of the act under which this company was organized does or does not authorize such an arrangement, so as to make it obligatory upon the parties while it was executory, still having been performed in good faith, it can not now be rescinded and a different agreement, substituted in its place.

The judgment of the superior court should I think be affirmed.

　　　　　　　　　　　　　　Judgment affirmed.