## No. 7999.

### SUCCESSIONS OF J. B. HOOD AND WIFE.

It is discretionary with the judge of the Probate Court, on the application of the administrator of a succession, to cause the property ordered to be sold to pay debts, to be re-examined and re-appraised by the experts.

This re-appraisement can be made at any time before the sale.

It is only when the creditors demand it, that the property of a succession must be sold for cash. In the absence of such demand from the creditors, it is legal and proper for the Court to order the sale to be made partly for cash and partly on credit.

When property of a succession is sold to pay debts, on the application of the administrator, whether there are minor heirs or not, the adjudication can legally be made at the two-thirds of the appaisement.

It is only when the creditors demand the sale under Article 990, C. P., that the full appraisement must be reached.

**A**PPEAL from the Second District Court, parish of Orleans. *Tissot,* J.

*Joseph P. Hornor* and *Francis W. Baker* for the Purchaser, Appellant:

First—Property of a succession sold, even to pay debts, must, at the first offering, bring the appraised value in the inventory.

Second—Property of a succession, sold on the application of the administrator, should be offered for cash at the first offering, and if it does not bring the appraised value in the inventory, must be re-offered, in accordance with C. P. Art. 990, on twelve months' credit.

Third—A sale of succession property to pay debts, made at the instance of the administrator, cannot be made on credit, even with the consent of creditors, particularly when it does not appear that all the creditors of the succession have consented.

Fourth—There is no law authorizing the re-appraisement of succession property before a sale, except that in case of a sale to wind up a vacant succession, under C. C. Arts. 1169 and 1170.

Fifth—The validity of the title to real estate sold at succession sale does not depend upon the opinions of witnesses as to the actual value of the property on the day of the sale.

*Gibson, Hall & Montgomery* for the Administrator, Appellee:

First—Property of a succession sold to pay debts need not bring more than it is worth, as evidenced by an appraisement of competent persons, made before the sale.

Second—An appraisement of succession property made by order of court, after the order of sale has been granted, and before the sale, is a good appraisement to fix the value of the property, and binding upon a purchaser at such sale, so far as the amount it must bring under the law.

Third—The requirement of the law relative to appraisement and sales of succession property, is to have it sold under an appraisement made before the sale that conclusively fixes the value of the property at the sale.

Fourth—Succession property sold to pay debts may be sold for part cash and balance on terms of credit when such a sale is clearly in the interest of the succession and the creditors, and to get the highest price and is agreed to by them before the sale.

Fifth—The excessive valuation of property made in an inventory cannot prevent an appraisement before the sale at what it is worth, when such fact is clearly proved.

The opinion of the Court was delivered by

BERMUDEZ, C. J. On the application of the administrator of these successions, the only piece of real estate belonging thereto was ordered to be sold.

It was mortgaged to secure $23,200. It had been appraised in the inventory at $15,000. Two days before the sale it was ordered to be re-appraised, and it was valued at $12,000. With the consent of the mortgage creditors, who had pressed payment, it was ordered to be sold part cash, part on credit. On the day of sale it was bid off to the highest and last bidder for $12,500; but the adjudicatee refused to accept the title. The deceased left minor children.

From a judgment ordering compliance with the sale, the adjudicatee has appealed.

The question presented for solution is:

Can the immovable property of a succession, in which minors are interested, and which is ordered to be sold to pay debts at the instance of the administrator, be adjudicated at the first offering for less than the appraisement in the inventory, and on any other terms than cash?

The question has long ago, and quite frequently since, been decided in the affirmative, the minors, who are beneficiary heirs, being considered as having a mere residuary interest. This has been held not only in cases in which the property was ordered to be sold on the demand of an administrator, but also of a tutor administering a doubtfully solvent succession. 7 L. 312; 8 L. 412; 5 R. 96; 10 R. 396, 457; 11 R. 508; 2 An. 966; 4 An. 578; 9 An. 107; 13 An. 383; 15 An. 641; 16 An. 420; 28 An. 175, 269.

In the first of the two last cases in 28 An., the jurisprudence on the subject had been emphatically announced as settled, although there was delivered a dissenting opinion on the occasion. But for the hypothetical ruling at first made in 29 An. 505, and next in 31 An. 414, particu-

larly in the last case which was *discussed*, the question would not presently admit of the slightest doubt.

In the first of those cases, decided in June, 1877, at Opelousas, the Court well held that a sale of succession property to pay debts could not be made for less than two-thirds of the appraisement, but added that sales made for less than the appraised value will not be disturbed, *if* there be proof that the price at which it was adjudicated is its actual value, thus hypothetically sanctioning a sale *at less* than the appraisement.

In another case, decided shortly after, in the same volume, p. 536, as it were with a view to dispel the cloud apparently thus cast, the same Court, Spencer, J., said:

"We are aware that this Court has held that the sale of minors' property to pay the ancestors' debts, may, under certain circumstances, be made for *less* than its appraisement; but we think the property in those cases was rather that of a succession than that of a minor, and that the law, as laid down in articles 990, 991, 992 of the Code of Practice, governing sales of succession property, received a most liberal interpretation in the cases where this Court so held."

"While upon the doctrine of *stare decisis*, we would be loth to depart from the rule that succession property sold to pay debts may, on first offering, be sold for *less* than its appraisement, we are not disposed to extend the rule to property belonging exclusively to minors. We prefer to adhere to the letter of the law, that it cannot be legally sold *for less* than the appraisement." C. C. 342, *et seq.*

The most recent expression of the judicial mind on the subject was delivered in Tabary, 31 An. 411. The Court there distinctly said:

"At the pages of the Code to which we refer, what do we read? That, when sold for cash, the property of vacant estates, of all successions accepted with benefit of inventory, whether the heirs are minors or of age, and of all successions under administration, cannot, at the first offering, be sold for less than its appraised value; that, unless that value be bid and obtained, the property must be readvertised for sale and then sold on credit for what it will bring."

The articles referred to are 990, 991, 992, 995 C. P.

It is worthy of note, that article R. C. C. 1170, relative to the sale of the property of a vacant succession, directs the judge to cause it "to be estimated by experts, by him appointed and sworn, and if at the sale, *two-thirds* of the estimated value be not offered for it, the sale shall be suspended and the curator is bound to have it again exposed after the same time of notice," &c., "but then, the property must be sold at the price offered."

It is likewise to be borne in mind, that article 995 of the C. P., ex-

pressly provides, that what is said in the section in which it is found " only applies where such estates are *administered* by curators, or other persons appointed by a court, or by testamentary executors."

It is to be regretted that a principle which appeared to be deeply imbedded in our jurisprudence, and which had become a rule of practice and of property, was thus shaken, and that a question which had been considered forever set at rest, was thus again agitated.

After a thorough examination of all the authorities on the subject, we find that the question has been unnecessarily complicated, to the mistification of both Bench and Bar, by amalgamating with it the interest of minors concerned in the succession, and other considerations, which appear to us to have no affinity to it.

The error committed consists in the double fallacious assumption, that minors have greater rights than major heirs, in the settlement of an estate, and that the articles of the Code of Practice (990–2–5) have a general purpose, and therefore must receive an inflexible application to *all cases* of sales of succession real estate.

Minors are invariably beneficiary heirs. Majors are, at their option, either beneficiary or unconditional heirs. In either case, when the succession is in the hands and under the control of an executor or of an administrator, and is in process of liquidation, the interest of the heirs, minors or majors, being merely contingent, *deducto œre alieno*, neither *must* be consulted, or heard, before an application is made by the succession representative, as an essential condition precedent, for the validity of an order of sale to pay debts. They are notified of it by the public advertisements during thirty days. 24 An. 530; 15 An. 675; 19 An. 528; 18 An. 496; 28 An. 269; 2 An. 966. If the order have been improperly granted, or if the heirs wish to prevent the sale, by tendering the amount required for the payment of the debts or the discharge of the legacies, if there be any, they are not left without adequate remedy. 23 An. 309, 633; 24 An. 530. On a proper showing they, or creditors, would be entitled, either to have the terms of sale changed or the sale itself arrested. What that showing should be, necessarily will have to depend upon contingencies. If the sale be not arrested or the terms modified, and it take place, it will be treated as ratified by the implied consent of both creditors and heirs, and title will pass to the adjudicatee, who is not bound to look for protection beyond the decree of a court of competent jurisdiction, and may safely comply with the terms of adjudication.

It is an indisputable proposition that the law allows that which it does not forbid.

The clear right of a creditor, whose claim is liquidated by a judgment, is to subject the property of his debtor, when any is found, to the

satisfaction of his debt. His remedy to that end varies according to circumstances.

If the debtor live, the creditor, if he hold a judgment contradictorily obtained, or has a claim secured by an authentic mortgage, may issue a *fi. fa.* against all and levy on any of the property of his debtor, or executory process against the real estate specially affected, and have it sold at the first offering at *two-thirds* or more of its appraisement, or without appraisement, where the same is duly waived.

If the debtor have died, the creditor, if his claim be liquidated by judgment, or acknowledged, can insist upon a sale being ordered, in the mortuary proceeding. *In such a case*, the law requires that the appraisement be reached, and if it be not, that the property be afterwards sold at any price at twelve months' credit to the highest and last bidder.

If the creditor, however, be one whose claim is secured by mortgage, he has two remedies. It is optional with him, either to insist for an order of sale in the *mortuaria*, or to proceed *via executivâ* in different and distinct proceedings. In the former case, the property could not be sold for less than the appraisement at the first offering. 5 R. 96; 10 R. 457; 3 An. 607; 10 An. 238. In the latter case, he would be entitled to have the property sold at the first offering at two-thirds or more of the appraisement and, in both instances, if there were no adjudication at the first crying, he could have it subsequently sold for any price at twelve months' credit. 12 An. 69; 19 An. 528.

*But now*, if the creditor does not insist on an order of sale in the *mortuaria*, or does not proceed *via executivâ*, being a mortgage creditor, and the administrator is prevailed upon, or considers that the creditors should be paid, he may, as the representative of all the creditors, *ut universi*, as their mouth-piece, speak in the name of all, and apply for a sale of sufficient property to pay them. *In such a case*, there is no law that requires that the property should bring the inventory appraisement.

In the absence of any express provision of law on the subject, the case being one of expropriation of the legal successors of the deceased debtor to pay his debts or those of his succession, the court must be guided by laws *in pari materia*, which are alike in instances in which *writs* are issued and in which an order is made for the sale of the property of insolvents, or of vacant estates, that is, at *two-thirds* of the appraisement. R. C. C. 21, 2184, 1170; C. P. 995.

Article 1167 R. C. C. is to the effect that the sale in the case of a vacant succession can be made to the last and highest bidder and does not impose any lower limit for an adjudication.

Article 1170, in the instance stated, fixes that limit at two-thirds of the appraisement.

Article 2184 provides that all sales of property ceded to creditors must be made at the same terms and under the same formalities that property seized on execution is sold.

Article 680 C. P. authorizes an adjudication if the price offered by the highest and last bidder reach or exceed two-thirds of the appraisement.

Article 995 C. P. assimilates all succession sales, whether the estates are administered by curators or other persons appointed by a court, or by testamentary executors.

In Carter vs. McManus, 15 An. 642, the Court well said through Mr. Justice Land as its organ:

"It has been repeatedly held, that the rules which regulate the sale of the property of minors, do not apply to sales of succession property made at the instance of administrators for the payment of debts. And, as a consequence of this ruling, it has been held, that the sale of succession property for the payment of debts may be made for less than the appraised value in the inventory. And, as a further consequence of the same ruling, such sales must be held valid and binding upon minor heirs as well as upon heirs of full age; for, in estates accepted with the benefit of inventory, no law requires that the property shall produce its appraised value, nor that a reappraisement be made in case the first estimation shall not be obtained."   See authorities quoted.

In the succession of Weber, 16 An. 420, the Court, Mr. Justice Voorhies delivering the opinion, said:

"The payment of the debts must be effected without regard to the appraisement, when the sale is ordered at the instance of the administrator; but, if ordered at the instance of the creditors, then recourse must be had to articles 990, 991 and 992 of the Code of Practice."

See, also, 2 An. 968; 19 An. 528; 28 An. 175, 269; 13 An. 383; 9 An. 107.

We think that those opinions are a sound exposition of the doctrine on the subject, and as the ruling in 31 An. 414 is solitary and cannot be considered as representing previous adjudications, which were, in 29 An. 536, formally recognized as *stare decisis*, it should not be invoked as authority on the question there decided in other similar cases.   13 L. 445; 6 R. 225; 11 R. 302; 13 An. 345.

The reason for which the law requires (C. P. 999–2) that property ordered to be sold, at the demand of a creditor, shall not be adjudicated for less than the appraisement, is that it will not permit one or a few to force a sale and have the property sold for less than the appraisement, possibly sacrificed, when all others concerned remaining silent, apparently consent by their tacit acquiescence, that matters continue *in statu quo* until they otherwise determine.

But the adjudication in the present case, not only exceeds the two-thirds of the inventory appraisement, but also the evaluation ordered and made shortly before the sale.

It was discretionary with the District Judge, on the application of the administrator, to cause the property ordered to be sold to be re-examined and reappraised, as it may well be that the property may have been appraised too high at first, or shrunk from the original evaluation put upon it. The report of the *experts* appraising it at $12,000 is indicative of that hypothesis.

The objection that the order to value again was made two days before the sale, is unwholesome. A judicial sale to pay debts has for its objects a forced expropriation. Had the mortgage creditors proceeded *via executivâ* as they might have done, the property securing their claim could have been appraised, as is usual, shortly before, possibly on the very day of sale. The appraisement is intended as a guide for the officer or succession representative making the sale. It is sufficient if it be made in time for the sale. 2 An. 206.

We hear no complaint from any creditor or heir in this case. The mortgage creditors, who could have required the sale for cash, have consented to its being made on terms, deeming it to their advantage.

It is *only* where the creditors require, when they demand a sale, that it be made for cash, that the court must so order. As a rule, it is preferable, where no objection is made, that the sale be ordered on more advantageous terms. The practice has been to ask, and the courts have sanctioned sales, part cash part on credit, the notes afterwards to be reduced to cash with proper authority. 2 An. 966; 19 An. 355; 15 An. 264.

Had the property in question brought the inventory appraisement, the surplus over the adjudication actually made and under consideration would have wholly enured to and been completely absorbed by the mortgage creditors.

We take the rule to be, that the property left by deceased persons, when ordered to be sold *to pay debts* on the application of a succession representative, executor, administrator, or other, in any succession, legal, testamentary, or irregular, vacant or not, accepted with benefit of inventory or unconditionally, whether the heirs be of age or minors, or both, present or absent, or both, can be legally sold *for less* than the appraisement thereof, but not for less than two-thirds thereof at the first offering; and that the *only* case, in which the law requires that the appraisement be reached, is when one or more creditors require a sale under the provisions of articles C. P. 990–2.

We have taken much pain to review the whole subject. We have given it our full and diligent attention, and after a patient and thorough

Board of Liquidators of Hart & Hebert vs. Bates, Sheriff, et al.

investigation and mature deliberation, we have come to the conclusions which we have expressed. We trust that the question will now be con-. sidered at rest, and that no title will be questioned when the same has been obtained in the cases within the purview of this opinion, which far from upsetting, may quiet such titles.

We find no error in the judgment appealed from. It is, therefore, affirmed with costs.