## FOLEY v. WESTERN N. Y. & P. R. Co.

(*Superior Court of Buffalo, General Term.* July 8, 1892.)

DISCHARGE OF SERVANT—RE-EMPLOYMENT UNDER ASSUMED NAME—COMPENSATION.

The fact that a brakeman, who had been discharged, and who would have had no chance for re-employment by the company had his identity been known, obtained re-employment under an assumed name, does not justify the company, after having had the benefit of his services, and in the absence of any damage, in refusing to pay him for the said services on discovery of the deception. WHITE, J., dissenting.

Appeal from trial term.

Suit by Frank Foley against the Western New York & Pennsylvania Railroad Company to recover upon a *quantum meruit* for services as a brakeman. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

*L. P. Hancock*, for appellant. *O. O. Cottle*, for respondent.

TITUS, C. J. It appears that at one time the plaintiff was in the employ of the defendant, and that for some reason he was discharged; that he again sought employment under the name of Frank McGuire, and was engaged in the capacity of a brakeman on a freight train. After he had worked 36 days, it became known to the defendant that he was in fact the Frank Foley whom it had previously discharged from its employ, and he was thereupon immediately discharged, apparently for the same reason as for his first discharge. The defendant refused to pay him for his services while employed as Frank McGuire. He performed his duties under his last employment satisfactorily to the defendant, being prompt and efficient in his work. No complaint is made against him, or reason given for his discharge, except the fact that he was once in the employ of the railroad and discharged from its service. No claim is made by the defendant for damages against him while in its employ, either as Frank Foley or Frank McGuire, but it seeks to be relieved from the payment of his wages on the ground that he falsely represented himself to be Frank McGuire, and fraudulently induced the defendant to enter into a contract with him, when, if his identity had been known, he would not have been employed. No claim is made that the defendant suffered any damage by reason of the false representations, but, having been imposed upon by him, it claims not to be liable to pay for the services performed. I think that the judgment of the municipal court must be affirmed. It is a well-settled principle of law that, where no damage has been suffered by reason of fraud,

no action will lie, and the law does not take cognizance of a fraud which is not actionable.   2 Pars. Cont. (5th Ed.) 771; *Morgan* v. *Bliss*, 2 Mass. 112. The defendant has had the services of the plaintiff and has suffered no damages.   Concededly his services were valuable and worth what he claims them to be.   After he has finished his work—after the contract is completed—it is difficult to see how the defendant can escape liability.   The plaintiff was employed for no definite period.   He could have left the employment of the defendant without notice.   He could have been discharged by it at pleasure. And when either party elects to terminate a contract for labor, indefinite as to the time, it becomes a completed contract.   *McLees* v. *Hall*, 10 Wend. 426. And after a contract has been fully executed it cannot be repudiated by the party who has reaped the benefit of it.   *Emmet* v. *Reed*, 8 N. Y. 312.   Suppose the plaintiff had made an arrangement to work one month, and at the expiration of that time can it be said that the defendant could refuse to pay his wages on the ground that he had fraudulently withheld his name, when it had suffered no damage?   And as this contract was indefinite in character, and becomes an executed contract whenever either party elects, then the rule is applicable the same as if it were fixed and definite.   It is elementary that fraud vitiates all contracts, but this is only in case the party knowing of the fraud desires to avoid the contract.   He may rescind the contract and recover the price paid, or he may affirm the contract and sue for damages. *Camp* v. *Pulver*, 5 Barb. 91.   But, unless the contract is an illegal one, for an unlawful purpose, it may still be performed, and the parties made liable under it.   If they wish to avoid it, they must elect and take steps to that end; but when it has become an executed contract, and the party alleging the fraud has reaped all the benefits from it, he cannot then say to the other party that it is fraudulent, and excuse himself from performing on his part; and so the fraud, to be actionable, must have resulted in a direct and positive injury to the party.   *Taylor* v. *Scoville*, 54 Barb. 34.   It is not claimed in this case that the defendant was damaged or injured in any way by the fraudulent conduct of the plaintiff, and no damages have resulted from it, and hence the fraud becomes immaterial.   *Taylor* v. *Scoville*, ?Hun, 301.   I think, therefore, the judgment of the municipal court should be affirmed, with costs.

HATCH, J., concurs.

WHITE, J., (*dissenting.*)   This is an appeal from a judgment for $93.30, recovered by the respondent against the appellant in the municipal court of Buffalo on October 29, 1891.   The recovery was upon a *quantum meruit* for services rendered by the respondent as a brakeman on the defendant's railroad in August and September, 1891.   The defendant is a domestic steam railroad corporation.   My associates and I agree that the employment of the respondent in which he rendered the services in question was fraudulently obtained by him by means of false and fraudulent representations as to his identity, and that immediately upon discovering such fraud the defendant discharged and refused to permit the respondent to continue in its service.   Prior to August, 1891, the respondent had been in the service of the appellant, and had been discharged from such service for reasons satisfactory to it, apparently growing out of a collision between two trains on its road, on one of which the respondent was at work.   At the time of his first discharge the respondent was notified that the rules of the company forbade his re-employment.   Such was the fact, and he would not have been re-employed if his identity had been known to the defendant when he applied for work and entered its service the second time.   The services rendered under the second employment were worth the amount recovered in the judgment appealed from.   The respondent claims and my associates rest the right to recover the value of the services performed by him on the grounds:   (1) That no damage resulted to the appellant by rea-

son of the fraudulent procurement of the contract of employment by the respondent. (2) That although the contract was procured by the respondent by fraud in the first instance, the appellant received the benefit and advantage of its performance, and, being unable to restore to respondent what it had thus received, must pay therefor. The authorities relied upon as sustaining those propositions, and many other cases, hold, in substance, and the law is well settled, that an action for damages founded on fraud cannot be maintained unless actual injury has resulted or may result from the fraud complained of; and, further, that when a party claims to have been defrauded and seeks to rescind a contract for that reason, he must first restore or offer to restore to the alleged fraudulent party such property or benefits, if any, as he himself may have received on the faith of the contract which he alleges was fraudulent. Damages, as defined by text-books and adjudged cases, are the indemnity recoverable by a person who has sustained an injury, either in person or property or relative rights through the act or default of another. So, in the nature of things, no action can be maintained for recovery of damages where no damage has been sustained. Such is the policy.of the law. If it were otherwise, unscrupulous persons might find constant employment in bringing suits for real or imaginary fraudulent or tortious acts causing actual injury to no one. A party to an action is not permitted to perpetrate a fraud for his own advantage on the sole ground that another with whom he has contracted intended to perpetrate a fraud upon him; and therefore, when a party to an action seeks to recover damages for an alleged fraud, or to be relieved from an alleged fraudulent contract, he is required to exhibit clean hands in court. He who seeks equity must do equity; and so the law which prevents the recovery of damages for a fraud which has produced none, and requires a party to restore, so far as he can, such property or benefits as he may have received on the faith of a contract which he alleges to be fraudulent, before maintaining an action thereon, but prescribes rules of conduct which commend themselves to the judgment of all honest men.

I think that the doctrine of restoration, however, has no application to this case. This is not an action for the rescission of a fraudulent contract, nor is it an action to recover damages sustained by reason of the fraudulent conduct of one of the parties thereto, but is an action to recover wages under a contract based on the fraud of the plaintiff, who by his own fraud made restoration impossible; or, more accurately speaking, the nature of the contract was such as to preclude the application of the rule of law requiring restoration. Furthermore, the law requiring restoration is not absolute, and "when the party who has practiced the fraud has entangled and complicated the subject of the contract in such a manner as to render it impossible that he should be restored to his former condition," the rule has no application. *People* v. *Stephens*, 71 N. Y. 527. Restoration in this case after the services were rendered, and when the fraud was discovered, was, of course, impossible, and the reason for its being impossible was caused solely by the fraud of the plaintiff himself. The theory of the appellant's counsel is that no recovery can be had on the ground that no contractual relations existed between the parties, within the cases which hold that, where the master never intended to employ the servant, and its mind never rested upon him, and as between the two there was no consensus of mind which could lead to any agreement, there was merely the one side to a contract, where, in order to produce a contract, two sides would be required. The result must be the same whether that be the correct theory or whether contractual relations did exist, and I prefer to adopt the latter view of the matter. No principle of law is better or more firmly established than that "a fraudulent party cannot himself assert his fraud, and claim as his right any advantages resulting from it. To permit him to do so would be to contradict the plainest principles of law. No man can be permitted to found any rights upon his own wrong." Such is

the law as laid down in all works on the subject, and the reports of decisions to the same effect are many.

It cannot certainly be claimed that the judgment appealed from was recovered upon any basis other than that of the contract under which the services of the plaintiff were rendered, and no contract was alleged or proved other than the one conceded to have been induced by the fraud of the plaintiff. How, then, can the plaintiff maintain an action upon such a contract? There are many cases holding that a party cannot collect pay for services rendered pursuant to a contract which is merely informal or against public policy. Much less can a party recover for services rendered pursuant to a contract founded on his active and positive fraud. I am, however, of the opinion that actual damage was sustained by the appellant by reason of the contractual relations created between it and the respondent by the fraudulent act of the respondent, or, at any rate, that the law will assume such to be the fact. The statute law of this state makes it a misdemeanor for steam railroad companies to even employ persons for certain positions in their service who possess certain defects of character, or are deficient in certain qualifications as to intellectual acquirements. Not only that, but the relation of master and servant between a steam railroad corporation and its brakemen involves responsibilities of a most grave and serious nature on the part of the master. The relation is one of confidence, demanding the utmost truth and good faith between them, and so sedulously is this principle guarded that all departures from it are esteemed frauds upon the confidence bestowed. A party has an absolute right to select and determine with whom he will contract, and to refuse to contract with any particular person for reasons satisfactory to himself; and the sufficiency of those reasons cannot be inquired into. Especially is this the case with masters engaged in business as dangerous as that of operating a steam railroad, where negligence or misconduct on the part of an employe may involve loss of human life as well as pecuniary damage. For its own protection it was perfectly proper that the appellant should adopt the rule or regulation that it did,—to re-employ no servant who had been once discharged from its service; and when the respondent by his fraudulent conduct secured such re-employment, he violated a right possessed by the appellant, which was as sacred and much more vital than that which enables a defrauded party to rescind a contract, or restores to the fraudulent party property received on the faith of it; and whenever an injury is done to such a right, actual, perceptible damage is not indispensable, but it is sufficient in a case like this to show the violation, and the law will presume damage. "The law cares very little what the loss of the fraudulent party may be, and exacts nothing solely for his sake. If he so entangles himself that the party defrauded cannot unloose him, the fault is his own, and the law only requires of the defrauded party that he shall, so far as he is able, undo what has been done in the execution of the contract. This is all that honesty and fair dealing require, and, if it fails to extricate the wrongdoer from the position he has assumed, it is in no sense the fault of his intended victim." *Hammond* v. *Pennock*, 61 N. Y. 145; *People* v. *Stephens*, 71 N. Y. 553. It is conceded that the claim of the plaintiff is based upon a contract secured by his fraudulent representations; that the defendant was an innocent and defrauded party in the transaction, which it repudiated as soon as the facts became known to it. I think the court should refuse its aid to the fraudulent party in such a case, and, therefore, that the judgment appealed from should be reversed.