## DAVID AIKEN *v.* JAMES OGILVIE.

12    353
125   518

Where several persons buy a tract of land, in the name of one of themselves, for the purpose of dividing it into lots and squares, and selling the same at a profit to be shared among them, the notes and assets, as well as the unsold lots, are subject to the action of partition, and a suit by one of the partners against the other, to compel him to account for sales made by him, will not be barred by the prescription of ten years.

Where it does not appear to have been more the duty of one partner than another to collect debts due to the partnership, and the partner who undertakes to collect them has placed them in the hands of a competent attorney, and has acted in good faith, he ought not to be held responsible for the negligent or irregular acts of such attorney (or other competent agent) although the suit was brought in the name of the individual partner instead of the names of the joint owners.

A PPEAL from the Third District Court of New Orleans, *Kennedy*, J. *J. Livingston*, for plaintiff. *C. Roselius* and *P. A. Ducros*, for defendant and appellant.

MERRICK, C. J. "On the 27th day of February, 1836, *James Ogilvie*, *Oliver Aiken* and *John Green* made an agreement by private act, in which it was set forth that *James Ogilvie* had on that day purchased a plantation, jointly with *Oliver Aiken* and *John Green*, each one-third, from *Mr. Louis Fred. Foucher*, that each party had paid his one-third of the cash payment thereon; and which further stipulated that said *Green*, *Ogilvie* and *Aiken* were joint proprietors of said property, in the proportion of one-third each, and entitled to one-third of the same, with all the rights and privileges, interests and profits, and to demand the same of *James Ogilvie;* each to bear one-third of all expenses and losses on the same; that either two should have a controlling power in the management of the plantation, to sell or otherwise, as they shall think fit, and the third shall conform to the wishes of the other two on all lawful matters, &c.

"On the same day was purchased the plantation of *Foucher*, for the price of $70,000—$15,000 cash, and the balance, $55,000, on a credit of one, two and three years, secured by mortgage, with the right to the purchasers to redeem the same at any time, at a deduction of seven per cent. per annum. Subsequently the front portion of this property was surveyed and divided into squares and lots, and now constitutes what is known as the town of Greenville. This front portion, for the most part, was sold at public auction, by *Isaac L. McCoy*, auctioneer, on the 27th April, 1836. The sales, which were actually completed at that time, amounted to the sum of $226,770, on which there was collected in cash $300 for buildings. The balance was sold on a credit of six, twelve, twenty-four and thirty-six months from day of sale, and secured by mortgage.

"On the 11th of July, 1836, most if not all the notes, the proceeds of *McCoy's* sales, remaining undisposed of, were divided among the partners. On the 15th of October, 1836, *Oliver Aiken* departed this life, and by last will and testament constituted *David Aiken* and other parties (plaintiffs by supplemental petition) his only heirs."

In March, 1837, a verbal division took place of the unsold lots in Greenville. The rest of the purchase appears to have been laid out in a town called Friburg, and was sold the 8th of February, 1839, at auction, for $8,596.

This suit is brought to compel the defendant to account for all sales made by him, and to render him accountable for certain debts alleged to be lost through

his neglect; and to compel him to render an account of all the lots on hand, and prays for a judgment and interest for the several sums claimed, and for final partition and liquidation of the partnership. The action was commenced in July, 1852.

The defendant filed an answer and an account, in which he claimed, by way of reconvention, a balance against the plaintiff.

The matter was referred to an auditor, who found, in favor of plaintiff, $20,196 69, and five per cent. interest thereon from 13th December, 1839. This account was opposed by the defendant, and amended by the District Judge so far as to award to the plaintiff certain unsold squares of ground, and decreeing the plaintiff $16,285 18, with five per cent. interest on $10,943 15 from the 14th day of April, 1849, until paid.

From this judgment the defendant has appealed. We consider the matter stated in the motion for an appeal as descriptive of the judgment appealed from.

Defendant relies on two grounds:

1st. The action, so far as it has its object to call upon *Ogilvie* for an account, is prescribed. The transactions, out of which the alleged liability to account arose, took place in 1836, and the present action was commenced in December, 1852, more than fourteen years after the obligation which is sought to be enforced originated. It is a personal action, and is prescribed by the prescription of ten years.

2d. That the defendant is erroneously charged $19,160 and interest, the amount of the purchases by *Rillieux*.

I. The plea of prescription cannot be maintained. The contract between *Aiken*, *Green* and *Ogilvie* was for the purpose of buying a plantation in *Ogilvie's* name, dividing it into lots and squares, and selling the same at a profit and sharing the same equally among them. The land remaining in *Ogilvie's* name, and the notes and assets in the partners' hands, as well as the unsold lots, were subject to the action of partition. We do not think the informal and provisional partitions, if such they may be called, changed the character of the possession of the parties so as to give rise to the prescription of ten years.

II. We are of the opinion that the defendant ought not to be charged with the amount of the purchases of *Rillieux*.

We do not know that the defendant was under any greater obligation to collect these notes than either of the other partners. It is unreasonable that they should stand by twelve or fourteen years and leave their associate to struggle with the collection of the debts, and after it has become difficult to make the proof in justification, step forward and hold him responsible for the oversight of his lawyer in compromising with an insolvent debtor.

For all that appears, the claims were in the hands of a competent lawyer, and we are not disposed to hold the defendant responsible for his acts, although the suit was brought in his name instead of the names of the joint owners. If the defendant's name was used it was for the benefit of his partners. As we hold that the action is not the action of mandate, and therefore not prescribed, but the action of partition, so we think that where it appears that the partner has acted in good faith in matters of business which it was no more his duty to attend to than his co-partners, that he ought not to be held for the negligent or irregular acts of such competent agents in the ordinary discharge of their duty as he may be obliged to employ.

Moreover it does not appear that the plaintiffs have been in any manner in-

jured by the compromise, as it has not been shown that the judgment, even for the amount rendered, could have been satisfied out of any property owned by *Rillieux.*

If this is the only considerable debt which these partners have lost, they have exhibited one of the most fortunate speculations of the inflated period of 1836 which has come under our observation.

As the defendant does not complain of the judgment in any other respect, it will be amended so as to deduct the one-third of the *Rillieux* debt and interest, and the error in the numbers of the squares corrected, as conceded by defendant, and so amended the judgment must be affirmed.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be amended in favor of the plaintiff, so as to order the defendant to make a title to the plaintiff of squares Nos. 55, 61 and 48, instead of 51, 65 and 48, as mentioned in the said decree; and that said judgment be also amended in favor of the defendant, so as to reduce the sum awarded the plaintiffs by said decree from sixteen thousand two hundred and eighty-eight dollars and eighteen cents, with five per cent. interest on ten thousand nine hundred and forty-three dollars and fifteen cents from the 14th April, 1849, to six thousand eight hundred and ninety-two dollars and twenty-five cents, with five per cent. interest on the sum of four thousand six hundred and twenty-three dollars and sixty-five cents, with five per cent. interest thereon per annum from said 14th day of April, 1849, and that said judgment so amended be affirmed, the plaintiffs and appellees paying the costs of appeal, and the defendant the costs of the lower court.

---

### SAME CASE ON A RE-HEARING.

MERRICK, C. J.   In this case the parties, plaintiffs and defendant, consent that the judgment rendered in this case be amended, so far as relates to the squares to be conveyed, so as to conform to the judgment of the court below, after the correction of the errors in the numbers of the squares, and so as to read thus:

It is ordered, &c., that the judgment heretofore rendered by this court be amended so as to read as follows: It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be amended in favor of the plaintiffs, and that *David Aiken* be and is hereby decreed to be the owner of one-half of the property hereinafter described, and that *Frederick W. Aiken, Eleanor C. Aiken, Helen Aiken, Martha Aiken* and *Caroline Aiken* be considered and they are hereby decreed to be the owner each of one-tenth of the same property, viz: squares Nos. 55, 61 and 48 in the town of Greenville, and squares Nos. 2, 3, 4, 5, 6 and 11 in the town of Friburg, according to a plan drawn by *B. Buisson*, surveyor of the parish of Jefferson, on the 15th of April, 1836, and deposited in the office of *W. Y. Lewis*, notary public; and that said plaintiffs be put in possession of the property aforesaid.