On Rehearing.
MONROE, J.
3. Plaintiffs complain that the court erred in holding that the principle of collation does not apply, and their counsel argue that:
“As assignees of certain heirs, the Piersons took the place of such heirs. , They were entitled to the same rights and subject to the same obligations. Amongst those obligations was that of collating.”
“Collation” is, however, due only with respect to some gift or advantage which a forced heir has received from the parent (or ascendant) himself; the obligation of the heir, or his assignee, with respect to the property, in excess of his share, which he may have taken, or acquired, from the succession of the parent, being governed by other rules. The word “otherwise,” as used in Civ, Code, art. 1227:
“The collation of goods is the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such, property may be divided together with the other effects of the succession”
—must, as we take it, be construed with reference to the provisions contained in other articles, such as article 1230, which provides that:
“Collation must take place, whether the donor has formally ordered it or remained silent on the subject; for collation is always presumed, where it has not been expressly forbidden.”
In other words, it is intended (by the word “otherwise,” as used in the article quoted) to include anything and everything that may have been received, taken, or in any manner acquired by the heir from the parent himself, save where the latter has indicat *513 ed unequivocally that it was intended as an advantage. Civ. Code, arts. 1231, 1233, 1248.
“Nous avons dit que le rapport et dü de ce que l’héritier a regu du défunt, directement ou indireetement, mais il faut pour cela qu’il ait regu du défunt, lui-méme, qu’il soit son donataire.” Duranton, vol. 7, p. 319.
“II faut, toutefois, bien entendu, pourque l’héritier soit sounds a l’obligation de rapporter, qui’il ait, en effet, recu quelque chose du défunt.” Demolombe, Des Successions, vol. 4, p. 544.
“En d’autres termes, 1’obligation du rapport n’existe que pour les dispositions a titre gratuit, faites par la personne a la succession de la quelle le donataire ou le légataire se trouve appelé.” Aubry & Rau, vol. 6, p. 620.
See, also, Baudry-Lacantinerie, Des Successions, vol. 3, p. 191; Flower, King & Putnam v. Myrick, 49 La. Ann. 324, 21 South. 542.
2. Plaintiffs further allege that the court erred:
“In holding that the Piersons were not obliged to account in any way for the property disposed of by their father. They are doubly bound to account: (a) Because, in this suit, they assume the capacity of unconditional heirs of their father;_ and (b) because what they bought was the interest of their father in the succession. Manifestly, his interest was a certain fractional proportion, less what he had received on account.”
Defendants, on the other hand, say that the court erred in not according to their mother, and (through her) to them, the benefit of the possession of her vendor (their father), and in not, upon that basis, maintaining their plea of the prescription of 30 years; in not allowing them the benefit of their plea of prescription as to the property sold by them, with 'respect to which they are warrantors, entitled to plead any defenses that might be urged by their vendees; in not maintaining the prescription pleaded against the demand for money received by them, the action in that respect being a personal one.
There is no doubt that, where an heir (and the same may be said of a co-proprietor, other than an heir) has possessed the whole or part of an estate separately for 30 years, he may successfully oppose a suit for partition. Civ. Code, arts. 1305, 3475. But he must have possessed uninterruptedly and in the same character during the entire period; and where a person, having acquired a particular described tract of land, has taken possession of an adjoining tract, or, having acquired a specific interest in a particular tract, has taken possession of the whole, with a view of acquiring the additional tract, or interest, merely by holding possession of it under a claim of ownership; he does not convey such possession to a vendee, to whom he sells the tract or interest described, and such vendee cannot, for the purpose of aiding himself in the acquisition by prescription of property not included in his title, add his vendor’s possession to his own, there being no privity between him and his' vendor in that respect. Civ. Code, art. 3520; Prevost v. Johnson, 9 Mart. (O. S.) 170; City v. Shakespeare, 39 La. Ann. 1033, 3 South. 346; Railway Co. v. Le Rosen, 52 La. Ann. 204, 26 South. 854; Jasperson v. Scharnikow, 15 L. R. A. 1192, 1202 (notes); A. & E. Enc. of Law (2d Ed.) vol. 1, pp. 842, 845; Cyc. vol. 1, p. 1007. From which it follows that, as Mrs. Pierson acquired at the sale in the succession of her husband only that interest in the land in question which he had acquired from the Hyams successions (less that which he had sold), his possession, beyond that interest, cannot be added to hers for the purposes of the prescription of 30 years which defendants plead, and, without such addition (conceding, arguendo merely, that the possession in both cases was of a character to furnish a basis for the prescription), the prescriptive period had not expired when it was interrupted by this suit; Mrs. Pierson having made her purchase in 1876 and this suit having been instituted in 1904.
Concerning the shorter prescriptions (of 3 and 10 years) pleaded by defendants, it is clear that, as to the lots which have been *515 sold, whether by E. L. Pierson, Mrs. Pierson, or the defendants, no judgment affecting the titles can be here rendered, since the vendees, in possession under titles apparently translative of property, have not been made parties to the suit. In fact, no such judgment is asked for; the demand of plaintiffs being in effect that defendants be required to collate, with respect to such lots, by taking less, or—
“if for any reason, the court should not consider them and their similarly situated heirs entitled to demand the above-mentioned basis of partition, then that the equality be produced in whatever other equitable method may seem fit to the court, say, by the rendition of a money judgment against the Pierson heirs for $5,-000, or in such other way as law and equity may warrant. In case relief is denied them altogether on this score, they pray that their right be reserved to claim their interest in the parts disposed of by the Piersons.”
We have already concluded that when an heir, or the assignee of an heir, takes from the succession property in excess of that to which he is entitled, his liability in the premises is not governed by the rules providing for and regulating collation, because those rules are confined in their application to cases where heirs have received something from their ancestor, which, in the absence of unequivocal language to the contrary, is presumed to have been “given in advance of what they might one day expect from the succession.” Civ. Code, art. 1229. When, however, individuals acquire property in indivisión, otherwise than by inheritance from a common ancestor, the same principle of equality governs, with respect to its partition, . as in the matter of the partition of succession property among heirs (Civ. Code, arts. 1290, 1318, 1398), though the method by which such equality is secured is not the same in the two cases. The heir who is called on to collate may, for instance, at his Option, return the property that he has received to the mass, or retain it at its value at the time of the opening of the succession (Civ. Code, arts. 1255, 1268); biit an ordinary co-. proprietor (whether of property constituting the succession of a common ancestor or otherwise), who appropriates to himself more than’ his share, has no such option. He may be compelled to surrender the property, if he still has it, and to account for the rents and revenues; or, if he has parted with it, he may be liable for the damages sustained by the others, without reference, necessarily, to the value of the property at the date of its acquisition. . Again, where the heir who holds property subject to collation has in due time announced his intention of collating in kind, he is not liable for the loss of the property, should it be destroyed without his fault (Civ. Code, art. 1211); but we know of no law which would exempt au ordinary co-proprietor, wrongfully in possession of his co-owners’ share of the property owned in indivisión, from liability for its loss. And again, the donee of movable property subject to collation is not permitted to collate in kind, but is bound to collate by taking less, according to the value of the property at the time of the donation (Civ. Code, art. 12S3); but the ordinary co-owner of movable property, who appropriates the share of his co-owner, may surrender it on demand, or he may be compelled to account for it at its maximum value prior to such demand. It would therefore appear that, though the remedy of one (ordinary) co-owner against another for the enforcement of his rights with respect to the property held in common is not exactly the same as that of a forced heir, with respect to advances which have been made by the common ancestor to his coheir, and is not to be found in a demand for “collation,” it is about as effective under some other name. Such co-owner may bring his suit for partition, and all the rules applicable to partitions among the heirs of a common ancestor are applicable thereto, save “that which relates to collation,” and the place of the rule thus *517 excepted is amply filled by those which govern the relation and rights of ordinary individuals, and under which the one may be compelled to render to the other that which belongs to or is due him. The action of partition cannot be prescribed against so long as the thing remains in common and the community is acknowledged or proved. Civ. Code, art. 1304. If, however, any one of the incidents which are necessary to the enforcement of the rule of equality in such case were prescriptible, the effect would be the same as though the action itself were prescriptible. Thus, if one, owning an undivided third interest in certain real estate, should take possession of the whole, and, assuming to be the owner, sell a portion of it equal to his share, and the vendee, holding under a just title and in good faith for 10 years, should have his title perfected by prescription, and it should then be held that the action of the vendor’s co-owners against him for the price of their interest or for damages was barred by the prescription of 3 or 10 years, but that he still had the right to participate, upon equal terms with them, in the partition of the remaining two-thirds of the property, the rule of equality would be destroyed and great injustice would result. It has accordingly been held that, though the action of a partner against his copartner for an account may, as an independent demand, be prescribed in 10 years from the dissolution of the firm, yet that, where the action is one for the partition of property held in common, the settlement of the accounts being an incident thereto, the demand for the same is barred by only the prescription of 30 years. In reaching that conclusion, Merrick, C. J., said:'
“The settlement of the accounts of the partners is but an incident to the partition, precisely as the recovery of the rents and revenues is an incident to the action of revendieation of real estate. The defendant may be a usurper and a possessor in bad faith, yet the prescription of one year will not bar the action for the rents and revenues, as an incident to the petitory action. Toul. 72; 6 Saugrey, 248-251, Berlin Ed. So here the settlement of the accounts is an incident to the partition, and, without the same, there can be no equality in the partition. * * * Mackeldy¡ says: ‘Lorsqu’une succession, ou un objet parliculier, fait l’objet de la communaute, chaqué co-héritier, ou co-propriétaire, a le droit d’intenter coutre l’autre une action en partage; le cohéritier ou le co-propriétaire, qui, jusque-la, ¡5. administré la succession ou la chose commune est tenu de rendre compte de sa gestión et de partager, ' proportionellement, avec les autres, tout ce qu’il a acquis.’ Brussel’s Ed. 1846, p. 239, § 503, No. 2, Partie Speciale. See, also Dig. lib. 10, t. 2, lex. 19; Dig. 10, t. 3, lex. 20.” King v. Wartelle, 14 La. Ann. 742.
See, also, Aiken v. Ogilvie, 12 La. Ann. 353.
In a later ease our present Chief Justice, as the organ of the court, said:
“Collation is an incident of the operation of partition. It cannot be separately subjected to prescription without holding that the action of partition may be partially extinguished in so far as relates to collation, though in full force and effect in so far as relates to. a distribution of the property. This would be contradictory, for of properties to be contributed are the donations to the heirs that are subject to collation; therefore, during the time that the action for a partition lies, the action ‘en rapport’ is unextinguished.” Succession of Couder, 46 La. Ann. 272, 14 South. 909.
We therefore conclude that plaintiffs’ demand — that as an incident to the partition, and as a necessary condition to the observance of the rule of equality therein, defendants should be required to account, by taking less or otherwise, for so much of the property, originally held in common, as they or their authors may have already received and disposed of — is not barred by the prescription of either 3 or 10 years. It is contended on behalf of defendants that, if they are to be considered as inheriting from their father as well as their mother, they must also be held to have inherited their father’s possession, which, added to that of their mother, would complete the 30 years required to perfect their title. Possession is, however, in the main a fact, particularly the possession needed for the acquisition of property without title, and it is nowhere pretend *519 ed that as a fact defendants succeeded to their father’s possession. They were young children at the time of his death, and the possession, following that event, which they have attempted to establish, was that of their mother, who acquired and held under a title which did not include the property here claimed, to wit, the interest of the plaintiffs in the land in controversy. What she did acquire under that title was the original interest which her husband had acquired, reduced to the extent of the land • which he .had sold. What she transmitted to deféndants was the interest so acquired, further reduced to the extent of the land which she had sold. And what the defendants now own is the interest so transmitted to them, still further reduced to the extent of the land which they have sold. So that, for the purposes of the partition of the land which remains, the original interest, which they claim, must be charged with, and suffer, the reductions stated. The theory propounded on behalf of defendants seems to be that, though the holders of the original interest in question have eaten part of their cake, they still have the whole. Whilst, however, they object to being charged with what they have eaten, they do not object, so far as we are able to discover (if charged they must be), to the account as formulated in the opinion heretofore handed down. Nor do the plaintiffs appear to complain of that method of adjustment; their objection being merely that it leaves that portion of the interest acquired by E. L. Pierson, which he himself consumed, entirely unaccounted for, and that defendants, unless some change is made, are likely to be credited, instead of being charged, with that same consumed portion. We are of opinion that those fears were well-founded, and that the change asked for should be made.
3. Defendants’ counsel call attention to the fact that the judgment appealed from orders the sale of the property, as described in Exhibit I, annexed to plaintiffs’ petition, and they say:
“By examination of Exhibit I it will be seen that it contains, constituting part of it, the estimate by plaintiffs’ counsel upon the several pieces of property designated thereon. As the learned judge had no right to appraise the property', nor to approve or'adopt an appraisement prematurely made by others, whether authorized at the time or not, this part of the judgment is erroneous, and was doubtless inadvertent. * * * In order to correct the error, the judgment must be amended in that regard; particularly as it is conceded that a partition cannot be made without an inventory and appraisement, at the time of the sale or within a year prior thereto. But Exhibit I does show the property, and, if it has to be partitioned, it is as well designated aud described thereon as it would have been if written in the body of the judgment, so that this error can be corrected by making it a part of the judgment only for the purpose of designating or describing the property to be partitioned.”
The judgment appealed from reads in part as follows:
“It is ordered, adjudged, and decreed: First. That the heirs of S. H. Sibley, 1st, and the heirs of Robert H. Sibley, be and they are hereby decreed to be the owners of an undivided thirty four thousand two hundred and eighty and a half one hundred and fourteen thousand six hundred and eighty-eighths (jjjijgjfj) interest in and to the property sought to be partitioned herein and described in detail in Exhibit I, annexed to the petition in this suit, which Exhibit I is hereby mad^ part of this judgment; the interest of the said heirs, as amongst themselves, being as hereinafter set forth.”
The judgment then orders the sale of the property thus referred to by the sheriff at public auction, after 30 days’ advertisement, “for cash, for what it [may] bring, without appraisement,” rejects the demand of the plaintiffs for collation, at their cost, with reservation of their right to sue for that portion of the original holding which has been disposed of by E. L. Pierson, his widow, and heirs, decrees the defendants to be entitled to receive $700 in reimbursement of taxes paid by them, and proceeds:
“Fifth. The proceeds of the property, when sold, shall be divided as 'follows: (a) The court *521 costs in the matter of the partition proper shall first be paid, (b) The heirs of Mrs. Hattie M. Pierson shall be refunded the amount paid by them for taxes as above mentioned, (c) The rest of the proceeds shall be divided in the following proportions, namely [and then follows the distribution among the respective litigants, including those' whose existence and whereabouts are unknown].
“Sixth. The costs of suit, so far as dispute over the question of title is concerned, are to be taxed against the Pierson heirs.”
It therefore appears that the appraisement, which forms part of Exhibit I, is ignored in the judgment, and that the property is ordered to be sold without appraisement. The suggestion of defendants’ counsel — that there should be an inventory and appraisement — is, however, sustained by the law, and it has been held that property offered for sale to effect a partition cannot be sold, at the first offering, for, less than two-thirds of its appraised value. Civ. Code, arts. 1324, 1325, 1326; Succession of Hood & Wife, 33 La. Ann. 472. The judgment must therefore be amended as suggested.
4. Defendants’ counsel also call attention to the fact that, in the opinion heretofore handed down by this court, it is said that the property here in controversy belonged to the community existing between Dr. John Sibley and his second wife, and that by our former decree,the judgment appealed from is “set aside, in so far as it fixes the extent of the interests” of the litigants, which question is ordered to be left open for determination in the proceedings to be held before the notary; and counsel say:
“Appellees’ counsel conceded, in argument, that one-half of the property belonged to the third community. It was on that basis that the learned judge a quo made the distribution embodied in the judgment appealed from. * * * Appellees, by answer to the appeal, asked for certain amendments of the judgment, a change in the basis of distribution not being one of them, and asked that the judgment be affirmed in all other respects, one of which fixed the basis of distribution, which the former opinion unsettled, although appellees did not ask for a disturbance of the judgment on that particular question. * * * To make this change in the distribution would largely increase the share of the descendants of Henry Robert Sibley, the only child of the second wife, whose descendants are among the appellees, and largely decrease the shares of the other appellees, who are descendants of the children of the first and third wives. This change is not only not asked for by any of the appellees, but would do violence to the unvaried jurisprudence of this state.”
Counsel are correct in saying that plaintiffs (appellees) have not, in their answer to the appeal, asked for any amendment of the judgment appealed from with respect to the matter under consideration; nor do we find any suggestion to that effect in their application for rehearing or in the brief filed in support thereof; and, as defendants are asking for no such amendment, the judgment in question will in that respect remain undisturbed.
5. It is said that our former decree failed to allow defendants the taxes which have been disbursed by them, but the learned counsel are in error; the judgment of the district court, which allows the $700 claimed for taxes, having been in that respect affirmed.
G. Counsel for plaintiffs say that there was error in the judgment heretofore handed down:
“In decreeing that the costs shall be borne by the succession. All the costs of the appeal and such costs of the district court as were incurred in the dispute on the question of title should be taxed against the Pierson heirs.”
The costs incurred in the district court “in the dispute on the question of title” were awarded to plaintiffs, and, we think, correctly so. As to the costs of the appeal, the judgment appealed from, though to be amended on the more important points in the interest of the plaintiffs, is also to be amended at the instance of defendants and as a result of their appeal. Under such circumstances, the rule is to divide the costs, and we find no reason for not following the rule.
It is therefore ordered, adjudged, and decreed that the judgment heretofore handed down by this court be amended and recast, so as to read as follows, to wit:
*523 “It is ordered, adjudged, and decreed that the judgment appealed from be amended, so as to require that, in the partition to be effected between the parties litigant, the defendants account to the plaintiffs, in the proportion fixed for the partition, for the proceeds of the sales of the various lots sold, as shown by the Exhibits E, F, G, and I-I, annexed to the petition', by E. L. Pierson and Hattie M. Pierson, his widow, and by their children, defendants herein, and so as to award plaintiffs the costs^ incurred by them in the district court in establishing defendants’ liability as above decreed; that said judgment be further amended by striking therefrom the reservation in favor of plaintiffs of the right to sue -for the recovery of their interests in the various lots included in the sales mentioned; and by substituting the words ‘after due,’ instead of the word ‘without’ before the word ‘appraisement,’ so as to require the property to be sold ‘after due appraisement’; and that, as thus amended, said judgment of the district court be affirmed; the costs of the appeal to be borne by plaintiffs and defendants in the proportion of one-half each.”
It is further decreed that, as thus amended and recast, the said judgment, heretofore handed down by this court, be now reinstated and made the final judgment in the case.